**New Jersey Lawyers' Fund for Client Protection**
**Richard J. Hughes Justice Complex**
**25 Market Street, P.O. Box 961**
**Trenton, New Jersey 08625-0961**
**Ruby D. Cochran, Deputy Counsel**
**NJ ID #017151998**
**(609) 815-3030x52211; Our File CPF-1313**
*Attorney for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| IN RE: | : | CASE No. 19-19493-JKS |
| | : | |
| KIMBERLY SMITH TYLER | : | |
| | : | |
| DEBTOR | : | CHAPTER 7 |
| | : | |
| | : | ADVERSARY PROCEEDING NO. |
| | : | |
| NEW JERSEY LAWYERS' FUND FOR | : | |
| CLIENT PROTECTION | : | |
| | : | **COMPLAINT TO DETERMINE** |
| PLAINTIFF | : | **NON-DISCHARGEABILITY OF** |
| | : | **CERTAIN DEBTS OF THE** |
| v. | : | **DEBTOR UNDER CHAPTER 7** |
| | : | |
| KIMBERLY SMITH TYLER | : | |
| | : | |
| DEFENDANT | : | |

The New Jersey Lawyers' Fund for Client Protection (the "Fund"), Plaintiff in the captioned Adversary Proceeding, respectfully represents:

1)    The Fund is a creditor of the Debtor-Defendant, Kimberly Smith Tyler ("Debtor", "Defendant", "Respondent" or "Ms. Tyler"). The Fund brings this Adversary Proceeding in connection with Defendant's Chapter 7 Case No. 19-19493-JKS, which is pending in the United States Bankruptcy Court for the District of New Jersey.

2)     The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C.
Section 157, 28 U.S.C. Section 1334, and 11 U.S.C. Section 523. This is a core proceeding under
28 U.S.C. Section 157(b)(2)(I).

3)     The Plaintiff is a Committee of the Supreme Court of New Jersey. The Fund was
established under R. 1:28-1 et seq. of the Rules Governing the Courts of the State of New Jersey
for the purpose of reimbursing clients for losses caused by the dishonest conduct of attorneys who
have been admitted to the New Jersey Bar and who have been disciplined (suspended or disbarred)
by the Supreme Court of New Jersey.

4)     Defendant Tyler was such an attorney. Defendant was admitted to the Bar of the
State of New Jersey in 1990 and the New York Bar in 1998, and she maintained an office for the
practice of law in Newark, New Jersey.

## DISCIPLINARY and PROCEDURAL HISTORY

5)     After receiving a grievance filed against Ms. Tyler, the Office of Attorney Ethics
(OAE) initiated an investigation which resulted in the filing of a Disciplinary Action Complaint by
the District V-A Ethics Committee with the NJ Supreme Court on May 26, 2016. **(Exhibit A,
Disciplinary Action Complaint, page 3)** (Please note that exhibits are page numbered in the
upper right corner and the List of Exhibits is on pages one and two {P1 and P2})

6)     According to the Decision of the Disciplinary Review Board (DRB) decided May 14,
2018, Ms. Tyler had been reprimanded in 2011 for gross neglect, pattern of neglect, and lack of
diligence in six bankruptcy matters. She also filed to communicate with the clients..." **(Exhibit
B, DRB Decision, page 18, second full paragraph,)**

7)     According to the same DRB decision, Ms. Tyler had been reprimanded again in 2014
for "failure to communicate with a client in a bankruptcy matter." **(Exhibit B, DRB Decision,**

page 19, first full paragraph)

8)    "The five count first amended complaint charged respondent with violations" of the

Rules of Professional Conduct, which consisted of violations "of <u>RPC</u> 1.1(a) (gross neglect), <u>RPC</u>

1.1(b) (pattern of neglect, <u>RPC</u> 1.3 (lack of diligence), <u>RPC</u> 1.4(b) (failure to keep a client

reasonably informed about the status of a matter and to promptly comply with reasonable requests

for information), <u>RPC</u> 1.5(b) (failure to provide a client with a writing setting forth the basis or rate

of the fee) and <u>RPC</u> 8.4(c) (conduct involving, dishonesty, fraud, deceit or misrepresentation)."

**(Exhibit B, DRB Decision, page 17, second full paragraph, and page 18, first paragraph)**

9)    The District VA Ethics Committee (DEC) recommended a three-month suspension.

**(Exhibit B, DRB Decision, page 17, second paragraph)**

10)    "The stipulation...at the DEC hearing established that respondent accepted fees

from five clients, performed virtually no work in their matters, failed to communicate the status of

the matters to the clients or misrepresented their status, was difficult to reach, and in some of the

matters, failed to provide the clients with writings setting forth the basis or rate of her fee." **(Exhibit

B, DRB Decision, page 20, first paragraph)**

11)    One of the five clients mentioned above was Jose Soriano, whose matter was

discussed at some length.  **(Exhibit B, DRB Decision, pages 26 through 28)**

12)    Mr. Soriano filed a claim with the Fund, which will be addressed later in Count One.

13)    One of the five clients mentioned above was Wanda Crumel, whose matter was

discussed at some length.  **(Exhibit B, DRB Decision, pages 28 through 32)**

14)    Wanda Crumel had requested a claim form from the Fund, which had not yet been

returned.  The deadline for filing clams was one year after the suspension of Ms. Tyler from the

practice of law by the New Jersey Supreme Court, which will not expire until October 8, 2019.  Her

matter will be addressed in Count Five. **(Exhibit E, List of claim forms requested, page 55))**

15)    "The DEC found that respondent engaged in gross neglect, lack of diligence, and failure to communicate with clients in all five matters. Indeed, the DEC found that respondent engaged in a pattern of these violations." **(Exhibit B, DRB Decision, page 39, first paragraph)**

16)    "The DEC found, as an aggravating factor, respondent's disciplinary history." **(Exhibit B, DRB Decision, page 40, last paragraph)**

17)    The DRB determined that Ms. Tyler "engaged in a pattern of misconduct" when "she accepted retainers and then did nothing over the course of months, instead evading her clients and misrepresenting the status of their cases, violations of RPC 1.1(a) and (b), RPC 1.3, RPC 1.4(b), and RPC 8.4(c)." **(Exhibit B, DRB Decision, page 42, last paragraph, and page 43, first paragraph)**

18)    An Order temporarily suspending Ms. Tyler for six months for multiple violations of RPC 1.1(a) (gross neglect); RPC 1.1(b) (pattern of neglect); RPC 1.3 (lack of diligence); RPC 1.4(b) (failure to keep a client reasonably informed about the status of a matter and to promptly comply with reasonable requests for information); RPC 1.5(b) (failure to provide a client with a writing setting forth the basis or rate of the fee); and RPC 8.4(c) (conduct involving, dishonesty, fraud, deceit or misrepresentation); was entered by the NJ Supreme Court on September 5, 2018, and was effective October 8, 2018. **(Exhibit C, Order, page 50)**

19)    The Order temporarily suspending Ms. Tyler entered by the NJ Supreme Court on September 5, 2018, effective October 8, 2018, gave the Fund's Trustees jurisdiction to consider and pay claims filed against her under R. 1:28-1 et seq. of the Rules Governing the Courts of the State of New Jersey. **(Exhibit F, NJ Rules of Court 1:28-3(a)(2), page 58)**

20)    The Fund received four (4) claims against Ms. Tyler alleging losses totaling $8,350

from October 2018 to June 2019. **(Exhibit D, Case Summary, page 54)**

21)     The Fund Trustees granted an award of $2,965 in the Soriano matter, as discussed in Count One below. **(Exhibit D, Case Summary, page 54)**

22)     A claim filed by Terrell Stephen Everett against Ms. Tyler was granted an award of $2,500 at the Trustees meeting on July 17, 2019, which has not yet been paid, bringing the total awards granted to $5,465, as discussed in Count Three below. **(Exhibit D, Case Summary, page 54)**

23)     The claim filed by Henrietta Williamson and Scottie Thompson (wife and husband) was considered by the Fund Trustees at their meeting on July 17, 2019, and was dismissed for failure to prosecute as the claimants had not responded to requests for additional information. That claim may be reopened/reinstated if documentation is provided, as discussed in Count Two below. **(Exhibit D, Case Summary, page 54)**

24)     The claim filed by Scott Cain and Lilian Cain is currently under investigation, and no decision has been made regarding the compensability of this claim, as discussed in Count Four below. **(Exhibit D, Case Summary, page 54)**

25)     Additional claim forms were requested by Shynell Jones Williams, Wanda Crumel and Emilia Figueroa, but had not been completed and submitted to the Fund. **(Exhibit E, List of claim forms requested, page 55)** The Wanda Crumel matter is discussed in Count Five below.

26)     The deadline for filing claims is one year after the Order suspending Ms. Tyler, or October 8, 2019, and has not yet passed, and the potential that more claims will be filed with the Fund exists. **(Exhibit F, NJ Rules of Court 1:28-3(a)(2) and (a)(3), page 58)**

27)     Pursuant to R. 1:28-3(a)(1), as a condition of granting an award and paying each of the claims, the Board of Trustees of the Fund determined: (1) that the Defendant acted as an

attorney or in a fiduciary capacity to each claimant when the Defendant caused claimant's loss; and

(2) that the Defendant caused claimant's loss through his dishonest conduct. **(Exhibit F, NJ Rules of Court 1:28-3(a)(1), page 58)**

28)   Pursuant to R. 1:28-3(e) and as a further condition of paying the claims, the Fund has (or will) take a written assignment of rights from each of the claimants and became subrogated to the claimants' rights, claims and interests against the Debtor.  **(Exhibit F, NJ Rules of Court 1:28-3(e), page 59)**

29)   The Debtor incurred these debts through false pretenses, false representation or actual fraud, 11 U.S.C. §523(a)(2)(A), and/or, in the alternative, and thus these debts would not be dischargeable under the Bankruptcy Code.

30)   On May 5, 2019, Kimberly Smith Tyler (the "Debtor") filed a Voluntary Petition under Chapter 7 of Title 11 of the United States Bankruptcy Code, listing her debt to the Fund on Schedule F as a non-priority unsecured claim with no amount due reported, rather than the actual amount due to her former clients and paid (or to be paid) by the Fund. **(see Case No. 19-19493, Document 15, page 39 of 89, last item)**

31)   The claims filed with the Fund appear in Counts One through Four below.  We will analyze each claim in the order in which it was received by the Fund. **(Exhibit D, Case Summary, page 54)**

32)   The claims are also numbered, with claim 1313:01-18 received first.  The first part of the numbering system is "1313", which is assigned exclusively to Ms. Tyler, while ":01" reflects that this was the first claim filed against her, and with "-18" reflecting the year in which the claim was filed.

33)   Not all claims filed with the have been granted awards, and additional claims may

still be received because the Fund's deadline for filing claims has not expired under the Rules of Court governing the Fund.

## COUNT ONE

### (Jose, Consuelo and Ari Soriano) (Our File CPF-1313:01-18)

34)    The Defendant became indebted to the Fund's claimants, Jose, Consuelo and Ari Soriano (herein referred to as "the Sorianos" and "Mr. Soriano"), in the amount of $2,965 for a debt that was incurred through false pretenses, false representation or actual fraud, as follows:

35)    Mr. Jose Soriano met with Ms. Tyler on January 31, 2014, and retainer her for legal representation regarding a personal injury matter due to an assault. **(Exhibit G, Statement of Claim, page 68, first and second paragraphs)**

36)    The Sorianos and Ms. Tyler agreed on an attorney fee of $300 per hour, not to exceed $3,000, and they also agreed that this was not a contingency fee case. **(Exhibit H, Agreement to Provide Legal Services, page 72, #3)**

37)    Mr. Soriano paid Ms. Tyler $2,000 on January 31, 2014, and obtained a receipt. **(Exhibit I, Receipt and Copy of Check, pages 74 and 75)**

38)    Claimant stated that Respondent called him and asked for the balance of $1,000, and told him to send it to her by express mail. **(Exhibit G, Statement of Claim, page , end of 2nd paragraph)**

39)    The Sorianos sent a check, dated February 24, 2014, for the $1,000 balance by express overnight mail at a cost to him of $22. Both checks, which totaled $3,000, were from the bank account of Consuelo E. Soriano. **(Exhibit J, Copy of Check, page 76)**

40)    Because they did not hear from her, the Sorianos contacted Ms. Tyler many times to get updates on this case. **(Exhibit K, sample emails from the Sorianos from May and July**

2014, pages 77 and 78)

41)     In response, they received one-line emails in which Ms. Tyler said she was working on his case and she would be in touch. She gave the Sorianos no other information. **(Exhibit L, emails from Ms. Tyler from February through November 2014, pages 79 to 83)**

42)     The Sorianos were very dissatisfied, which prompted them to send an email and a letter to Respondent on or about December 17, 2014, which terminated her representation and requested a full refund of the $3,000 attorney fee. **(Exhibit M, Letter from Mr. Soriano, page 84, 2nd paragraph, and Email requesting refund, page 85)**

43)     Ms. Tyler's letter in response, dated December 18, 2014, denied the request for a refund because she had spent "too much time" on Claimant's case, and stated "I do not have to prove to you I have worked on your case..." **(Exhibit N, Letter from Ms. Tyler, page 86, 2nd paragraph)**

44)     In her letter, Ms. Tyler further stated that if Claimant continued to pursue a full refund, she would "be forced to file criminal charges for theft of services" against him, which "may entail jail time..." **(Exhibit N, Letter from Ms. Tyler, page 86, 3rd paragraph)**

45)     It is a violation of the NJ Rule of Professional Conduct 3.4(g) to "threaten to present criminal charges to obtain an improper advantage in a civil matter." **(Exhibit O, RPC 3.4, page 87)**

46)     After receiving the response from Ms. Tyler, Mr. Soriano contacted the Essex County Court on December 19, 2014, and learned that there was no pending case under his name. He realized that after eleven months, no work had been done on his behalf. **(Exhibit G, Statement of Claim, page 69, 2nd paragraph)**

47)     In 2016, the Sorianos filed a grievance against Ms. Tyler with the Office of Attorney

Ethics.  **(Exhibit G, Statement of Claim, page 69, 3rd paragraph)**

48)     That grievance was part of the basis for the Disciplinary Action Complaint filed by the Ethics Committee, which ultimately resulted in Ms. Tyler's suspension from the practice of law by the NJ Supreme Court.  **(Exhibit A, Disciplinary Action Complaint, pages 6 and 7)**

49)     On June 24, 2016, Ms. Tyler emailed Claimant and told him that she did "not think it was fair to refund the $3,000", but she would pay him back if he accepted payments.  She told Claimant that if she lost her license, she would not be able to pay him.  **(Exhibit P, emails between Mr. Soriano and Ms. Tyler, page 88, bottom of page, and page 89, top of page)**

50)     Claimant accepted her offer to pay him on a monthly basis, and Ms. Tyler indicated that she had applied for a loan so that she could pay him.  **(Exhibit P, emails between Mr. Soriano and Ms. Tyler, page 88)**

51)     Ms. Tyler was obligated to repay the Sorianos per NJ Rule of Professional Conduct 1.16(d), which requires that "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as …surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned or incurred."  **(Exhibit Q, RPC 1.16(d), page 92)**

52)     Respondent made only two payments to Claimant in 2016 which totaled $35: one MoneyGram for $25 dated July 9, and one Western Union money order for $10 dated August 12.  **(Exhibit R, Payments, page93)**

53)     By making these payments, Ms. Tyler acknowledged her obligation to return the funds she had not earned to the Sorianos, as required by RPC 1.16(d).

54)     When Mr. Soriano received no more payments from Ms. Tyler, he filed for a fee arbitration hearing, which took place on January 5, 2017.

55)    The panel determined that the Sorianos were entitled to a refund of $3,022, representing the $3,000 fee plus the $22 for the cost of the overnight mailing.  Since Ms. Tyler refunded $35, they determined that Claimant was entitled to $2,987.  **(Exhibit S, Arbitration Determination, page 101, 3ʳᵈ paragraph)**

56)    Ms. Tyler was ultimately suspended from the practice of law for six months for neglect, failure to keep her clients informed, and for conduct involving dishonesty, fraud, deceit or misrepresentation, in part for her actions in the Soriano matter.  **(Exhibit B, DRB Decision, pages 26 through 28)**

57)    In summary, Respondent accepted a retainer to represent Claimant and did no work. For eleven months, she repeatedly misrepresented to Claimant that she was working on his case, and when Claimant demanded the return of his retainer, she threatened him with criminal charges in violation of the Rules of Professional Conduct.  There was no evidence in court records that Ms. Tyler made any effort to pursue any party on Claimant's behalf.  She further violated the Rules of Professional Conduct when she failed to return the funds due to her client when her representation of Mr. Soriano was terminated.

58)    On May 5, 2019, Kimberly Smith Tyler (the "Debtor") filed a Voluntary Petition under Chapter 7 of Title 11 of the United States Bankruptcy Code.

59)    Ms. Tyler did not list her debt to the Sorianos on Schedule E/F as a non-priority unsecured claim, or anywhere else in her bankruptcy petition.  **(see Case No. 19-19493, Document 15, pages 18 to 49)**

60)    The Trustees of the Fund considered this claim at their monthly meeting in December 2018, and granted an award of $2,965

61)    As a condition of payment of the $2,965 award, the Sorianos executed a Release,

Assignment and Subrogation Agreement.  **(Exhibit T, Release, pages 102 to 105)**

62)    The debt of $2,965 which Ms. Tyler owes the Fund for this matter is

nondischargeable under 11 U.S.C. Section 523(a)(2)(A).

63)    Defendant incurred this debt through false pretenses, false representation or actual

fraud, 11 U.S.C. Section 523(a)(2)(A) when she accepted a retainer, performed no work, failed to

return the client's money in violation of the Rules of Professional conduct, and threatened her client

with criminal charges for requesting a refund, and thus this debt would not be dischargeable under

the Bankruptcy Code.

## COUNT TWO

### (Henrietta Williamson and Scottie Thompson) (Our File No. CPF-1313:02-19)

64)    The Defendant became indebted to the Fund's claimants, Henrietta Williamson and

Scottie Thompson, a married couple (herein referred to as "Ms. Williamson and Mr. Thompson"),

in the amount of $1,000 for a debt that was incurred through false pretenses, false representation

or actual fraud, as follows:

65)    The Claimants alleged that they hired Kimberly Tyler in August or September 2017

to file a bankruptcy petition on their behalf, but she did nothing.  **(Exhibit U, Statement of Claim,**

**page 106, #4 and #8, and page 108, #1 and #4)**

66)    Ms. Williamson said she paid Ms. Tyler $1,000 in cash and received a receipt, which

she can no longer locate.  She sent the Fund a copy of an undated text from her to the debtor in

which Ms. Tyler did not dispute receiving $1,000 from the Claimants in 2017.  **(Exhibit V,**

**Undated text to Ms. Tyler, page 110)**

67)    At the time Ms. Tyler accepted this retainer, Ms. Tyler knew or should have known

that the Disciplinary Action Complaint had been filed on May 26, 2016, and that she was subject

to discipline and the loss of her license to practice law.

68)    In a text to Ms. Tyler dated "Sun, Aug 19", Ms. Williamson requested a refund of her retainer after a year of apparent inaction on the part of Ms. Tyler.  **(Exhibit W, Text to Ms. Tyler dated "Sun, Aug 19", page 111)**

69)    Ms. Tyler was obligated to repay Ms. Williamson per NJ Rule of Professional Conduct 1.16(d), which requires that "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as …surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned or incurred."  **(Exhibit Q, RPC 1.16(d), page 92)**

70)    Ms. Tyler sent emails to Ms. Williamson dated "Mon, Oct 1" requesting documents that had already been sent to her, and failed to send materials to Ms. Williamson that were necessary to process the bankruptcy petition, evidencing her failure to provide the services for which she had been hired.  **(Exhibit X, Texts dated "Mon, Oct 1", pages 113 through 115)**

71)    Ms. Williamson made a second request for a refund after nothing was done by Ms. Tyler in their case, in an undated text which was sent sometime after February 2019, but before this claim was filed on March 19, 2019.  **(Exhibit Y, Undated text to Ms. Tyler, page 116)**

72)    Ms. Williamson stated that Ms. Tyler told her that Ms. Tyler would send her a refund, but failed to do so, and she provided a copy of an undated text from Ms. Tyler offering to "give you back $1,300 in partial payments", and another text dated "Mar 7" stating that Ms. Tyler was "applying for a loan to give you money."  **(Exhibit Z, Undated text from Ms. Tyler and text dated "Mar 7", pages 117 and 118)**

73)    Ms. Tyler had made a similar statement about applying for a loan in Count One, #50.  **(Exhibit P, page 88, top of page)**

74)   By making these payments, Ms. Tyler acknowledged her obligation to return the funds she had not earned to Ms. Williamson, as required by RPC 1.16(d).  **(Exhibit Q, NJ Rule of Professional Conduct 1.16(d), page 92)**

75)   Claimant advised that she had received a phone call around the beginning of May 2019 from Respondent, telling her that Ms. Tyler had deposited $500 in Western Union for the Claimants' benefit.  She said Ms. Tyler provided the Claimant with certain numbers needed for her to retrieve the funds from Western Union.

76)   Claimant was advised by the Fund to contact Western Union to see if those funds were in fact deposited and then to advise the Fund of the outcome.  Claimant said she would do that but really did not believe the Respondent had deposited the funds.  Nothing further was heard from the Claimant regarding the Western Union deposit.

77)   On May 5, 2019, Kimberly Smith Tyler (the "Debtor") filed a Voluntary Petition under Chapter 7 of Title 11 of the United States Bankruptcy Code.

78)   Ms. Tyler listed her debt to Henrietta Williamson and Scottie Thompson on Schedule E/F as separate non-priority unsecured claims in two locations on her bankruptcy petition, with the amount due to each party left blank.  **(see Case No. 19-19493, Document 15, page 47, first item, and page 49, first item)**

79)   At the July 17, 2019 monthly meeting, the Fund Trustees discontinued this claim without prejudice for lack of prosecution surrounding the Western Union issue, noting that the Claimants may ask that the claim be reopened.

80)   The debt of $1,000 which Ms. Tyler acknowledged in her emails that she owes to her former clients, and potentially to the Fund if an award is granted in this matter, is nondischargeable under 11 U.S.C. Section 523(a)(2)(A).

81)     Defendant incurred the debt through false pretenses, false representation or actual fraud, 11 U.S.C. Section 523(a)(2)(A) when she accepted a retainer at a time when she was the subject of a Disciplinary Action Complaint, performed no work, and failed to return the client's money in violation of the Rules of Professional conduct, and thus this debt would not be dischargeable under the Bankruptcy Code.

## COUNT THREE

### (Terrell Everett) (Our File No. CPF-1313:03-19)

82)     The Defendant became indebted to the Fund's claimant, Terrell Everett, (herein referred to as "Mr. Everrett"), in the amount of $2,500 for a debt that was incurred through false pretenses, false representation or actual fraud, as follows:

83)     Mr. Everett contacted Ms. Tyler regarding filing a bankruptcy petition for his grandmother's estate.  **(Exhibit AA, Emails dated October 15, 2019, page 120)**

84)     Mr. Everett met Ms. Tyler on October 19, 2018, "on a public road" and paid her $1,000 in cash for representation in his bankruptcy matter.  **(Exhibit BB, Statement of Claim – Supplemental Statement, page 126, #1)**

85)     Ms. Tyler provided a receipt for the $1,000 payment.  **(Exhibit CC, Receipt for $1,000, page 129)**

86)     An Order temporarily suspending Ms. Tyler for six months was entered by the NJ Supreme Court on September 5, 2018, effective October 8, 2018, eleven days before she first met with Mr. Everett and accepted the $1,000 payment.  **(Exhibit C, Order, page 50)**

87)     In spite of being suspended from the practice of law, on October 20, 2019, Ms. Tyler sent a retainer agreement to Mr. Everett by email, which he signed and returned.  A copy of the actual retainer agreement was not provided to the Fund.  **(Exhibit DD, Emails regarding retainer**

agreement, page 131)

88)    Nonetheless, Ms. Tyler told Mr. Everett that she would be filing his Chapter 13 Bankruptcy soon. He stated that the parties exchanged a multitude of emails, where he would ask questions about the bankruptcy, but her responses would not address his questions.

89)    An email from Ms. Tyler to Mr. Everett dated November 18, 2018, indicated that Ms. Tyler received a total of $2,500 from Mr. Everett towards a total fee of $4,700 for his Chapter 13 Bankruptcy, including the petition filing fee.  **(Exhibit EE, November 18, 2018 email, page 132, top of page)**

90)    This email points out Claimant's dire need for explanations and for the Respondent to take some action on his behalf, especially making contact with his mortgage company, however, her response does not address his concerns.  **(Exhibit EE, November 18, 2018 email, page 132)**

91)    By December 2018, the Claimant demanded the return of the entire retainer fee.

92)    Via email dated December 4, 2018, Ms. Tyler promised to refund $1,000 to Mr. Everett, in payments of $100 per month, but never made any of payments.  **(Exhibit FF, December 4, 2018 email, page 133)**

93)    By agreeing to make these repayments, Ms. Tyler acknowledged her obligation to return the funds she had not earned to Ms. Williamson, as required by RPC 1.16(d).  94)    Ms. Tyler was obligated to repay Mr. Everett per NJ Rule of Professional Conduct 1.16(d), which requires that "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ...surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned or incurred." **(Exhibit Q, NJ Rules of Professional Conduct 1.16(d), page 92)**

94)    When Mr. Everett pursued his request for a refund, Ms. Tyler replied to his emails

by stating that "trying to collect money not due is a crime", as she had done with Mr. Soriano in Count One. **(Exhibit GG, May 12, 2019 email, page 134)**

95)   It is a violation of the NJ Rule of Professional Conduct 3.4(g) to "threaten to present criminal charges to obtain an improper advantage in a civil matter." **(Exhibit O, NJ Rule of Professional Conduct 3.4(g), page 87)**

96)   On May 5, 2019, Kimberly Smith Tyler (the "Debtor") filed a Voluntary Petition under Chapter 7 of Title 11 of the United States Bankruptcy Code.

97)   Ms. Tyler listed her debt to Mr. Everett on Schedule E/F as a non-priority unsecured claim on her bankruptcy petition, with the amount due left blank. **(see Case No. 19-19493, Document 15, page 30, last item)**

98)   The Trustees of the Fund considered this claim at their monthly meeting on July 17, 2019, and granted an award of $2,500

99)   As a condition of payment of the $2,500 award, Mr. Everett executed a Release, Assignment and Subrogation Agreement, and payment by the Fund is pending. **(Exhibit HH, Release, pages 135 through 137)**

100)   The debt of $2,500 which Ms. Tyler owes the Fund for this matter is nondischargeable under 11 U.S.C. Section 523(a)(2)(A).

101)   Defendant incurred the debt through false pretenses, false representation or actual fraud, 11 U.S.C. Section 523(a)(2)(A) by soliciting clients and accepting retainers after her license to practice law had been suspended by the NJ Supreme Court, not performing the work for which she was retained, failing to return the client's money in violation of the Rules of Professional conduct, and by threatening her client with criminal charges for requesting a refund, and thus this debt would not be dischargeable under the Bankruptcy Code.

## COUNT FOUR

### (Scott Cain and Lillian Cain) (Our File No. CPF-1313:04-19)

102) The Defendant became indebted to the Fund's claimants, Scott Cain and his mother, Lilian Cain, (herein referred to as "the Cains"), in the amount of $1,980 for a debt that was incurred through false pretenses, false representation or actual fraud, as follows:

103) Scott Cain met with Ms. Tyler on September 15, 2018, and retained her to file a bankruptcy petition on behalf of his 92 year old mother, Lilian Cain. **(Exhibit II, Statement of Claim, page 138, #8 and page 142, #4)**

104) Mr. Cain was not aware that on September 5, 2018, just one week before they met, the NJ Supreme Court had issued an Order suspending Ms. Tyler from the practice of law effective October 8, 2018. **(Exhibit C, Order, page 50)**

105) The fee quoted by Ms. Tyler was $4,750, and Mr. Cain paid her $1,000 in cash at their first meeting, leaving a balance due of $3,750 per the receipt she issued to Mr. Cain dated September 15, 2018. **(Exhibit JJ, Receipt for $1,000, page 146)**

106) Mr. Cain met with Ms. Tyler two more times, on November 9 and November 17, 2018, and he said he paid her an additional $850 in cash. **(Exhibit II, Statement of Claim, page 138, #8)**

107) In an e-mail dated November 9, 2018, Ms. Tyler acknowledged receiving a payment of $300, and that the balance due was $2,900. **(Exhibit KK, Email dated November 9, 2018, page 147)**

108) To reduce the balance of the retainer due from $4,750 to $2,900, Ms. Tyler must have received $1,850 from the Cains by November 9, 2018.

109) In an e-mail dated November 17, 2018, Ms. Tyler acknowledged receiving an

additional payment of $300 in cash. That payment would have reduced the balance due to $2,600, indicating that the Cains had paid Ms. Tyler at least $2,150, based on her own acknowledgements. **(Exhibit LL, Email dated November 17, 2018, page 148)**

110)   It appeared to Mr. Cain that the only purpose for these meetings was for Ms. Tyler to get payments from him.  Both payments were made after the effective date of her suspension from the practice of law by the NJ Supreme Court of October 8, 2018.  **(Exhibit II, Statement of Claim, page 141, #5).**

111)   On October 23, 2018, Ms. Tyler filed a deficient Chapter 13 bankruptcy petition (#18-31128-VFP) which was missing various schedules and information, and the first installment of the filing fee consisting of $85 was paid on October 24, 2018.  **(Exhibit MM, Docket Report - Case #18-31128-VFP, pages 149 and 150)**

112)   The second installment of the filing fee consisting of $85 was paid on November 26, 2018, for a total of $170 paid for filing fees on behalf of Lilian Cain by Ms. Tyler.  **(Exhibit MM, Docket Report - Case #18-31128-VFP, page 152, top of page)**

113)   This bankruptcy petition was subsequently dismissed on December 17, 2018, after Ms. Tyler failed to cure numerous deficiencies, in spite of having obtained an extension of time to do so.  **(Exhibit MM, Docket Report - Case #18-31128-VFP, page 152, #24, and Exhibit NN, Email dated December 3, 2018, page 54)**

114)   On December 19, 2018, the Cains retained Steven Pertuz, Esq., to represent them in the bankruptcy court.  **(Exhibit OO, First and last page of Retainer Agreement, pages 155 and 156)**

115)   On January 11, 2019, Mr. Pertuz Filed a Chapter 13 bankruptcy petition (19-10673-VFP), which resulted in a plan being confirmed on June 12, 2019.  **(Exhibit PP, First page of**

**Docket Report – Case #19-10673-VFP, page 157)**

116)    On May 5, 2019, Kimberly Smith Tyler (the "Debtor") filed a Voluntary Petition under Chapter 7 of Title 11 of the United States Bankruptcy Code.

117)    Ms. Tyler listed her debt to Lilian Cain on Schedule E/F as a non-priority unsecured claim on her bankruptcy petition, with the amount due left blank.  **(see Case No. 19-19493, Document 15, page 29, last item)**

118)    The Trustees have not yet considered this claim, as the investigation into these allegations has not been completed.

119)    The debt of $1,980 which Ms. Tyler owes the Cains (consisting of the $2,150 they paid to her less the two partial payments of the filing fee totaling $170), and potentially the Fund, for this matter is nondischargeable under 11 U.S.C. Section 523(a)(2)(A).

120)    Defendant incurred the debt through false pretenses, false representation or actual fraud, 11 U.S.C. Section 523(a)(2)(A), by soliciting clients and accepting retainers after her license to practice law had been suspended by the NJ Supreme Court, providing no services of any value to her clients, and failing to return the client's money in violation of the Rules of Professional conduct, and thus this debt would not be dischargeable under the Bankruptcy Code.

## COUNT FIVE

### (Wanda Crumel)

121)    Although she requested a claim form, Wanda Crumel has not yet filed a claim with the Fund against Ms. Tyler.  **(Exhibit E, List of claim forms requested, page 55)**

122)    Because a claim is expected to be filed by Ms. Crumel, the limited information available to the Fund at this time is being presented here.

123)    On May 5, 2019, Kimberly Smith Tyler (the "Debtor") filed a Voluntary Petition

under Chapter 7 of Title 11 of the United States Bankruptcy Code.

124)    Ms. Tyler did not list her debt to Wanda Crumel on Schedule E/F as a non-priority unsecured claim, or anywhere else in her bankruptcy petition. **(see Case No. 19-19493, Document 15, pages 18 to 49)**

125)    According to the Disciplinary Action Complaint, dated May 26, 2016, Wanda Crumel retained Ms. Tyler in March 2012 for a real estate matter. **(Exhibit A, Disciplinary Action Complaint, page 7, #34)**

126)    According to the Decision of the Disciplinary Review Board (DRB) decided May 14, 2018, Ms.. Crumel paid Ms. Tyler $7,500 for legal representation on March 27, 2012. **(Exhibit B, DRB Decision, page 28, middle of page)**

127)    Due to her failure to provide services and communicate with her client, Ms. Crumel sent a letter via certified mail dated April 13, 2012 to terminate the representation. OAE verified that Ms. Tyler received that letter. **(Exhibit A, Disciplinary Action Complaint, page 8, #36)**

128)    When Ms. Crumel contacted Ms. Tyler ten days later to request a refund of the $7,500 paid to her, Ms. Tyler advised that she would not provide one, indicating that legal research had depleted the retainer. Ms. Tyler could not substantiate her claims. **(Exhibit A, Disciplinary Action Complaint, page 8, #38)**

129)    The OAE found that no substantive work was performed by Ms. Tyler on Ms. Crumels case. **(Exhibit A, Disciplinary Action Complaint, page 10, #48)**

130)    From April 2012 through July 2014, Ms. Crumel continued to request that her money be refunded by Ms. Tyler. **(Exhibit A, Disciplinary Action Complaint, page 8, #39)**

131)    According to the Decision of the Disciplinary Review Board (DRB), "By e-mail

dated February 27, 2013, respondent agreed to refund Crumel's retainer".  **(Exhibit B, DRB Decision, page 31, next to last paragraph)**  Ms. Tyler thus acknowledged her obligation to return her client's funds.

132)      Ms. Tyler was obligated to repay Ms. Crumel per NJ Rule of Professional Conduct 1.16(d), which requires that "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as …surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned or incurred."  **(Exhibit Q, Rule of Professional Conduct 1.16(d), page 92)**

133)      Ms. Tyler did not refund the Ms. Crumel's retainer.  **(Exhibit B, DRB Decision, page 32, 3rd paragraph)**

134)      In the Disciplinary Action Complaint, Fourth Count, Ms. Tyler was charged with violating Rule of Professional Conduct 8.4(c) for engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation."  **(Exhibit A, Disciplinary Action Complaint, page 14, #76, and Exhibit QQ, Rule of Professional Conduct 8.4(c), page 158)**

135)      Ms. Tyler was ultimately suspended from the practice of law by the NJ Supreme Court based in part on her actions in this matter.

136)      The debt of $&,500 which Ms. Tyler owes Ms. Crumel, and potentially the Fund if a claim is received and an award paid for this matter, is nondischargeable under 11 U.S.C. Section 523(a)(2)(A).

137)      Defendant incurred the debt through false pretenses, false representation or actual fraud, 11 U.S.C. Section 523(a)(2)(A) by accepting a retainer, failing to provide any services, and failing to return the client's money in violation of the Rules of Professional conduct, and thus this debt would not be dischargeable under the Bankruptcy Code.

## CONCLUSION

138)     The NJ Rule of Professional Conduct 8.4(c) states that "it is professional misconduct for a lawyer to engage in conduct involving dishonest, fraud, deceit or misrepresentation.  **(Exhibit QQ, Rule of Professional Conduct 8.4(c), page 158)**

139)     Ms. Tyler was charged with violating RPC 8.4(c) in the Fourth Count of the Disciplinary Action Complaint.  **(Exhibit A, Disciplinary Action Complaint, page 14)**

140)     According to the Decision of the Disciplinary Review Board (DRB) decided May 14, 2018, Ms. Tyler was found guilty of violating RPC 8.4(c).  **(Exhibit B, DRB Decision, page 43, last paragraph)**

141)     As discussed above, Ms. Tyler has engaged in a pattern and practice of demanding retainers from these clients, failed to provided services while misleading the clients, and then abandoning their legal matters.

142)     Ms. Tyler offered to refund the money she owed to her clients after they terminated her representation, but failed to do so.

143)     Ms. Tyler was obligated to repay her clients per NJ Rule of Professional Conduct 1.16(d), which requires that "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as …surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned or incurred."  **(Exhibit Q, Rule of Professional Conduct 1.16(d), page 92)**

144)     In both Counts One and Three, Ms. Tyler stated or inferred that she would file criminal charges against her former clients who were pursuing their right to a refund from her.

145)     It is a violation of the NJ Rule of Professional Conduct 3.4(g) to "threaten to present criminal charges to obtain an improper advantage in a civil matter."  **(Exhibit O, Rule of**

**Professional Conduct 3.4(g), page 87)**

 

**WHEREFORE**, Plaintiff New Jersey Lawyers' Fund for Client Protection prays that the Court determine that the debt owed by the debtor in each of the five counts discussed above, totaling the sum of **FIFTEEN THOUSAND NINE HUNDRED FORTY FIVE AND NO/100 DOLLARS ($15,945.00)** is non-dischargeable; and further that the Court render judgment for the Plaintiff in the amount of **FIFTEEN THOUSAND NINE HUNDRED FORTY FIVE AND NO/100 DOLLARS ($15,945.00)** plus interest and attorney's fees; and further that the Court determine the remaining issues and grant such other relief as it deems equitable and just.

 

NEW JERSEY LAWYERS' FUND
FOR CLIENT PROTECTION


*Ruby D Cochran*
RUBY D. COCHRAN, ESQ.
Attorney for Plaintiff


Dated: August 9, 2019

## <u>CERTIFICATION</u>

I, Ruby Diana Cochran, Esq., of full age, do hereby certify that I have read the above Complaint

and that, to the best of my knowledge, understanding and belief, formed after reasonable inquiry,

the Complaint is well-grounded in fact, is warranted by existing law, and is not interposed for any

improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.

*Ruby D Cochran*
RUBY D. COCHRAN, ESQ.
Attorney for Plaintiff

Dated: August 9, 2019